Good morning. This case presents several novel issues that the 5th Circuit hasn't considered before. My brief raises several additional issues, which I don't expect I will be able to address in the time I have allotted this morning. So it is my intention to focus on the alleged constitutional errors and the 1515C defense, which I believe is dispositive of the outcome of this case. Yes. And, of course, as you recognize, you don't waive any issues that you don't mention in argument. So just hit the high points. All right. The first issue that I wanted to address is the 1515C defense. Mr. Fisch is a criminal defense attorney, and he was charged with obstruction of justice in connection with his representation of several different criminal defendants that were charged with crimes in federal court. Nobody raised that defense in his trial. It was not raised by his attorney, who volunteered on his behalf after several of his former attorneys were his initial attorney because of a conflict of interest that arose in the case. The 1515C defense specifically provides that an attorney who provides lawful legal representation cannot be guilty of obstruction of justice. That is exactly what the government alleged Mr. Fisch did in the indictment, the evidence they offered at trial, including showing that he had entered appearances and filed motions on their behalf in their cases, demonstrated clearly that Mr. Fisch provided lawful legal representation to his clients. I'm not certain if the government was even aware of the defense. At one of the pretrial hearings, the government's attorneys pointed out that they didn't believe that he had any They raised public authority defense. They said it didn't qualify. So there were several defenses that they raised saying that Fisch was not entitled to those defenses, but nobody ever raised the 1515C defense. It's my belief that his volunteer counsel was perhaps not even aware that it existed. When I conferred with Mr. Fisch, he said it was never, ever raised by anybody. That is on-the-record evidence, I believe, sufficient evidence to find that his volunteer counsel was ineffective. He argued in closing argument that Mr. Fisch provided lawful legal representation. So in arguing it but failing to raise it and the jury not being able to consider it, I think that's a clear example of ineffective assistance to counsel, especially since that defense has been on the books for years. JUSTICE SCALIA. Are you saying there is no instruction to the jury that would have addressed this in part? There was the instruction that followed the Fifth Circuit jury instruction, 2.63a. I assume you're familiar with that issue. Why isn't that sufficient? You had some argument by a counsel that he was just providing defense to the jury. There's some of that already. Why isn't that instruction sufficient, particularly on plain error  MS. WARREN. Well, in my view, it's not sufficient because anybody at law — everybody can be charged under obstruction of justice, the Chapter 15, any of those sections. And the majority of people that are charged under those are not attorneys. It only applies to a defendant attorney who is charged with obstruction of justice. And so a jury who is given just the pattern jury charge does not have any differentiation between a non-attorney defendant and an attorney defendant. Only an attorney defendant is entitled to the defense. It wouldn't apply to any other defendant. And so the pattern jury charge does not identify or recognize the distinction between those different types of attorneys. So — and additionally, the case that they relied on out of the Eleventh Circuit, I believe, it might have been the Ninth, was a conspiracy count. It was not the obstruction of justice itself count, which requires evidence of Mr. Fish's specific intent. By not being instructed that if they found that he was providing lawful, bona fide legal representation, he couldn't be guilty of obstruction of justice, the jury would not be able to evaluate the evidence when they were considering an attorney defendant versus a non-attorney defendant. Also, the government in its brief suggests that Mr. Fish is arguing that the 1515c is an element of the government's offense, that we're not making that position. The Kless case made it very clear that it's not an element of the offense which the government must allege in its indictment. But once raised, either by the indictment or the facts of a case, then because it negated the intent element of the offense, the government did then have to take on the next burden of disproving that Mr. Fish did not provide lawful, legal, bona fide representation. And in this case, the government dismissed several counts on that very basis. They dismissed the Emo money laundering count because Mr. Emo testified that he was aware of the proposal, that he didn't decide to go for it, that he hired Mr. Fish for the express limited purpose of representing him in a bail hearing, and he authorized the payment of that money to Mr. Fish for that purpose. They dismissed the money laundering count, but not the obstruction count. How does that fit in factually with your argument that no one was aware of this defense, that at least some of the counts were actually dismissed because arguably bona fide legal representation was being provided? It seems like it was in play, and there was some awareness of it. Correct. It should have been in play. Everybody should have been aware of it. If they just read the statute, they would have been aware of it. Well, no. Wait, wait, wait, wait. What I'm saying is that people were aware of it. They dismissed certain counts. So how can you say people were not aware of the defense when you have these counts being dismissed? Well, I don't think that they dismissed the count on the basis of his defense. I think they dismissed the counts because they couldn't prove after the evidence came out at trial that, in fact, Mr. Fish had obstructed justice or money laundered because those defendants actually testified that they legitimately hired him for a legitimate purpose. And on the Herrera counts, those should never have been included in the indictment to begin with. Their own investigation showed that Mr. Herrera's count was unsupported by their facts. The FBI's 302s showed that Mr. Herrera's mother told the FBI that Mr. Fish was a fraud. I cannot help him. I cannot help your son. And that Mr. Herrera's mother told the FBI that she paid Mr. Fish the money to represent Mr. Herrera in court. Let me ask you a question about the finances in this case. There was an affidavit submitted to the district court, a financial affidavit. Is that in the record? Where is that? Are you talking about from his volunteer counsel? Yes. It was an odd thing. It was filed under seal. He sent two separate letters to the court requesting to be reimbursed for his expenses. The reason I became aware of it is because after the second letter was submitted, and it was submitted under seal, there was no electronic filing showing it. He sent it directly to the judge in Chambers, and she placed it under seal. She issued an order, which was filed, asking the government to respond to his request because it was an under usual request and she didn't see any legal basis for it. The government filed a one-line response saying they had no objection to the request. And I have no idea if anything has ever been done about it because there's not been any subsequent order entered by the court either granting or denying anything since the government filed its response. Are you being paid by Mr. Fish for representation? No. I have worked pro bono on this for the last year and a half. And in fact, I gave Mr. Fish money out of my own pocket to hire because I was very distressed at the representation of Mr. McCrum. And why did you get involved in this as a volunteer? Because I felt that there was a travesty of justice and that he needed to get another attorney to replace Mr. Crum immediately. And so I provided him with some funds so that he could hire Mr. Godinich to replace Mr. McCrum after the trial. Did you have a personal relationship with those lawyers? I met Mr. Fish for the first time in October 2013 over the phone from a mutual acquaintance. The mutual acquaintance was a mentor of mine in undergrad who convinced me to go to law school. And he also knows Mr. Fish and referred me to Mr. Fish to consider an interlocutory appeal on the traceability hearing issue, which I did do. I did file a notice of interlocutory appeal for him originally on the district court's denial of the traceability hearing. And we filed a motion to stay the jury trial. It was denied. The motion to stay was denied. And so we decided that we could only go forward with one thing at a time. And so we non-sued that appeal, and then he  The other thing I wanted to address, because I think it's very important, is the forfeiture and the pretrial restraint of his house. The government did it in a sort of unusual way in this particular case. They reported a Liz Pendens claiming an interest in the property. And when Mr. Fish asked for a traceability hearing, the government rejected it initially saying he needed to first prove he had other untainted assets and that he had other assets, and that the grand jury erred in making its initial determination. Is that before this court? I thought you dismissed that claim. No. That claim is before this court. We just want the Fifth Amendment violates the second and third issues that are raised. So you file a notice of appeal regarding the Liz Pendens issues, but then you voluntarily dismissed it. Is that not correct? No. No. I filed — they argued in their brief, the government argued in its brief, that the Liz Pendens was not entitled to be processed and therefore a hearing was not required. Our issue has always been that it was a pretrial restraint. The judge agreed, the district court agreed that it was a pretrial restraint. She sided Connecticut v. Dorr, but she said that before a hearing is required, he still had to make that initial threshold showing that he didn't have other sufficient assets. The difference in — I wanted to point out in this case, between this case and the court — the cases that the judge relied on to make that finding, in each of those cases, there was a probable cause finding by a court. And that's why they needed to make that initial showing, that they lacked other untainted assets, because there had been a warrant issued, a pretrial restraining order issued, so a court had somehow determined probable cause. But in this case, they recorded a Liz Pendens. There was never any court involvement in determining whether the government had probable cause to say the Wickford property was profitable. They proceeded to trial, never offered any evidence at trial that it was forfeitable, thereby waiving its claim that it is, and then asked for it as a substitute asset instead. The government argues it can pursue alternative theories of forfeiture. Well, I believe that based on this Court's decision in Aegeka that just came out in September, that that is — that an asset cannot be both directly forfeitable and a substitute asset. And the — I just want to — I don't know that this Court may be aware of it. I did not see that the Court was on the notice service list. I did file a motion to stay the interlocutory order of sale in the United States Supreme Court. Justice Kagan referred that motion to the entire Court, and it is currently set for conference on February 17th. So I believe that the Supreme Court is also very concerned about the government's actions in restraining property as directly forfeitable and then waiving that claim and seeking it as a substitute asset instead. Lastly, I think based on the Cayley decision, and I know that it wasn't the specific issue in Cayley, but based on the discussion between the Solicitor General, Justice Kennedy, and Chief Justice Roberts' comments in his dissent, due process requires a traceability hearing any time a defendant can test forfeiture. And that was — that was not afforded Mr. Fish in this case. I believe that for all of the reasons that are in the brief and the unusual facts that this case presents, that he needs to be — this case needs to be reversed or remanded for another trial. My time's up. I'm going to sit down. You've saved time for rebuttal. Thank you, Ms. Griswold. Ms. Hayden? I'll first address the issue with regards to the 1515C. That issue has never been decided by this Court as to whether it's an affirmative defense or not. It is consistent with two other circuits that have held that it is a type of exception that is treated as an affirmative defense. And in doing so, under this Court's circuit, Branch being one of them that was cited in the government's brief, the defendant does have the obligation and burden to raise affirmative defense. In other words, to present sufficient evidence that a reasonable jury would find in his favor. And in this case, it's — it was not raised. But when you look at the indictment — Some case law says the indictment itself can raise the defense. Don't you think this indictment is clear enough — No, Your Honor. — that 1515C would be in play? I do not believe that in this case, Your Honor, because Clois, I think, is the case you're referring to out of the Eleventh Circuit, that in that case the attorney provided bona fide way. He did not disclose the defendant's name because he had a pending probation violation. That was the extent of the obstruction that he was charged with. In this case, the indictment itself is alleging that Fish did everything outside of legal and bona fide representation. In other words, talking about bribing government officials, making false promises that cases are going to get fixed, telling represented defendants not to talk to — not to tell their lawyers, telling represented defendants, you know, to not take plea agreements, to not entertain negotiations with — plea negotiations with the government. Basically, everything that's alleged in the indictment is something that is outside of lawful bona fide representation. And that's why this case is taken out of cases like Clois. But — Let me ask you what — Yes, Your Honor. I'm taking a bit off the point that you're precisely making here. What is the evidence in this record of what he ever did that would be bona fide? What your friend on the other side said a few minutes ago is that he did file motions, that he did make appearances. Is there — can you flesh that out some? What is the evidence? Yes, Your Honor. In most of the cases he was involved in, he was removed pretty quickly. In the Emo case, I think, is the case that they're referring to where he did file a endeavor to obstruct justice by involving Williams to fix this Medicare fraud case for $3 million to be paid up front. Everything was always up front in large, substantial amounts. And in that case, they did that. What happened was Emo, in the end, couldn't come up with a $3 million. Fish insisted that all of it be paid up front. He couldn't. So then he decided he would just have Fish represent him individually, and he paid him $2,250,000. Fish was soon removed from his case. But in that process, he did file a motion in regards to Emo's bond. But there was substantial evidence before that that he endeavored to obstruct justice by the negotiating with Williams and Emo to get Emo's case fixed before that happened. But you're saying on most of the — on the rest of these cases, there's no evidence of what a defense counsel would traditionally do when being — acquiring a criminal defendant to investigate, there's no discovery, there's no meeting with the client beyond these initial discussions about money? There's none of that involved in the record? Not in the traditional sense, Your Honor. It was information that they were getting, and it didn't even have to be true. It could be bogus information that supposedly Williams, the co-defendant, was going to give to his government contacts in Washington, and this information was then going to be the key to them getting their cases dismissed. But as far as communication with the prosecutor and offering cooperation to the prosecutor and the people involved in the specific case, there was none. It was all going to be done outside of the criminal case. It was going to be done with individuals that weren't even involved in the case. And that's why it goes back to the evidence as it was either a false promise that was never going to occur, or it was contemplating bribing government officials, even though in this case, there was no evidence that any government officials were ever involved or bribed in this case. Well, what's your answer to, is it effective assistance not to seek a jury instruction on this? Your Honor, in response to your question with opposing counsel, the jury instruction, just like in St. John, the case that was cited in the government's brief, the remaining jury instruction substantially covered what the issue is, and that is corrupt specific intent. He had to act corruptly, and he had to act with specific intent to commit obstruction of justice, which dispels any legitimate or bona fide representation when you're acting corruptly. And so the jury instruction was correct. But it didn't focus the jury. A 1515c specific instruction would have focused the jury on bona fide legal representation, which best is implied as an instruction that was given. It wasn't specifically discussed, was it? It was not, Your Honor. It would be under plain air review. And so in assessing it under plain air review, as the government argued in its brief, he has failed to show, especially in light of substantial evidence of anything but lawful and bona fide representation, which in the government's brief, we go through each item of evidence that shows that he acted with corrupt intent, unlawful purpose. There was information from Venegas, and his investigator even said they were talking about bribery. He felt uncomfortable. There was information from another lawyer who met and said, I told Imo not to get involved. This sounds like bribery. There was tape-recorded conversations. There was the defendants themselves that each corroborated pretty much the other, and they didn't even know each other. It's about what happened in their cases. There's just substantial evidence that shows he told them not to tell their lawyers. They had to pay the money up front. He interfered with plea negotiations. They ended up getting a lot higher sentences. Some of them were spouses and others that were not going to be prosecuted were prosecuted. They were represented by other lawyers, so they were interfering with the representation that they were supposed to be, the relationship they had with their ongoing attorneys. Two of them, Barrera and Pertillo, were told to provide fictitious information. It didn't even matter if it was true. Now, going to corrupt intent, you would know that that's not bona fide legal representation. So there's several, you know, keep their arrangements secret. Don't tell anybody. Having an inmate paying them for referrals, Goodson, paying his son Cash in several different visits for him to refer these clients, which a lot of them were fellow inmates. Paying Williams, a non-lawyer, a substantial amount of fees that were involved. Counsel, I consider my question answered. Let me ask you another one, an issue not addressed by opposing counsel. Judge Rosenthal made a ruling on ineffective assistance of counsel. What should we do with that on appeal? As we all recognize, the general way in which such issues are raised are in a 2255 habeas later, but we have a ruling now already. Where are we jurisprudentially with an effective assistance of counsel? Well, Your Honor, in our brief we said that, like in most instances, an effective assistance of counsel is not addressed for the first time on appeal, but in looking at the record and reviewing the record, Judge Rosenthal was intimately involved in this case for four years and watched the whole trial take place. But she only knows what was in public. She doesn't know what was going on behind the scenes. She doesn't know the kinds of things that an affidavit might, coming from the counsel, all she knows is what was presented to her. And that's the problem with ruling on ineffective assistance at the trial stage. Yes, Your Honor. So I'm just wondering, do we have a binding ruling, or can we affirm or otherwise, without prejudice to it being raised later? What does seem to be our option? Your Honor, in this respect, with a 20-page motion with exhibits that were attached, the Court did specifically address those and was able to assess those particular ones. But with regards to additional claims that were not raised, I don't know exactly what the answer would be. Are they precluded from bringing new ineffective assistance of counsel claims that were not raised below? That subject didn't come up in the appeal. I don't know if they would be barred from it, even though they had the opportunity at that time. But with regards to what she specifically addressed, with regards to the evidence that was presented, she assessed the evidence that was presented and the arguments and found that he specifically did not raise ineffective assistance of counsel. And I think in the government's brief, we also argue as to why each claim is on its face meritless. Judge Rosenthal handled the motion practice, right? She didn't refer it to a magistrate. She handled everything. She saw the evidence as it came in. Yes, Your Honor. Let me ask you about the motion to forfeit the home. Yes. The government didn't raise that until the actual sentencing. So that's kind of hard to object to if it kind of hits you as a surprise. What was the purpose of the delay there? Well, Your Honor, I believe in the motions that were filed prior to the sentencing, it was raised. The government first moved for a money judgment, and then it stated in the — it was back in July. The sentencing was in October. So it was — the government moved for a money judgment and stated in there that it would seek to forfeit the Wickford property. And substitute it? Substitute asset. The authority that the home, Mr. Fisher's home, could be forfeited directly and also used as a substitute property. Yes, Your Honor. When the indictment was filed in 2011 and then you had the superseding indictment in 2013, the grand jury made a probable cause finding. It was alleged in the indictment that the Wickford property, the proceeds were used from the payments that were made by these criminal defendants to Fish and that there were proceeds that were paid into the house. And so the probable cause was the mechanism when the indictment was filed. Four years passes. We have two indictments and we have a trial. And during the trial, there were a couple of counts dismissed. One of them was EMOS with regards to the $250,000 payment, which was made within a few months of the purchase of the house. And there was also a count from Herrera that was dismissed, an $80,000 payment. You know, with trial strategy as to why they decided to dismiss those counts, you know, in hindsight, I'm not really sure exactly what the reasons were. You know, it could have been, you know, we don't want anything to interfere with the specific wrongful unlawful conduct that occurred, you know, with regards to filing a motion for bond or whatever. So in regards to that, though, at the end of the day, even at the time when the jury had come back with the verdict, the prosecutor reiterated that, yes, you know, there was a lot of, you know, there was money that went into the house. A lot of it had been dissipated. And, you know, at that time, they could have asked for the jury to deliberate on the forfeiture issue, but—and the court brought it up while the jury was still there. And at that point, nobody requested to have a bifurcated proceeding. I mean, it had been a month-long trial. If anything, a bifurcated—not having one benefited Fish, because at this time his wife was acquitted as well. Nobody wanted to have the jury decide it. So they didn't ask for the jury to decide. But it was—and it's another waiver issue that the government in its brief stated. I mean, it was there. The government—the jury was there to proceed, and nobody requested it. Fish is a lawyer himself. I mean, he—and that goes to the waiver issue with the interlocutory appeal on the tracing hearing. Judge Rosenthal— Is that another example of ineffective assistance of counsel? With regards to asking—no, because in this situation it benefited Fish. At the end of the day, he was subject to a money judgment for the entire amount of the proceeds that both defendants jointly and severally obtained. And so at the end of the day, he was always going to be looking at a $1.1 million money judgment. So whether they went after the House as a substitute asset to satisfy the money judgment or as a direct—you know, part of it—you know, it was never the government's position that filing a notice of lispendence meant that we own the whole property. It was always that we had an interest. It was a notice of interest in the property when it was filed. So at the end of the day, you know, instead of splitting up, okay, this portion is a direct—directly forfeitable, this—you know, we had a wife who was acquitted, so her interest in the property changed. If we went after it as a substitute asset, she—even a person who's acquitted of the conduct would not have a right to proceeds. So going after the House as a substitute asset allowed her to keep her one-half interest. So it benefited Fish indirectly in the way that his wife got to keep her whole one-half interest if the government went after it as a substitute asset versus trying to take a So in a—that—going back to the ineffective assistance of counsel question, it benefited Fish in the end indirectly because his wife was able to keep more property. So—and in the end, his forfeiture would not have been any different with regards to his interest. He was always going to be looking at a money judgment for $1.1 million, and at the end of the day, any property up to that amount was subject to forfeiture. Your Honors, also with regards to the waiver issue, I think that was discussed in the interlocutory appeal. The government's position is it was waived. It was a—it's like withdrawing an objection. There was an avenue that was actually exercised, and that was to file an interlocutory appeal. They exercised that option, and then they withdrew it. That is a typical example of waiver, and in this case, it's someone who is a lawyer himself who knows what his rights are, and he affirmatively withdrew that. So with regards to the argument concerning the denial—denial of the traceability hearing, it was waived. But even if it wasn't waived, Your Honor, the government's position is that Judge Rosenthal was very conservative all the way through in the way that she proceeded with this case. All of the circuits except for the Ninth Circuit have required a threshold showing, and it's not a high burden to overcome. And Judge Rosenthal did not apply the Jones-Farmer, which has a two-threshold test. She only applied one threshold, and that was for Fish to come forward and show, you know, sufficient showing, evidence, some sort of evidentiary support that he had no other assets other than his interest in this Wickford property with which to retain counsel. And in this case, he did not. He was extreporous the whole way through. He refused to cooperate. She gave him five different opportunities. There was hearings that occurred over a year period, and during that time, he repeatedly said he didn't have to do it. He shouldn't have to do it. He shouldn't have to make any showing. Towards the end, he submitted a bare-bones affidavit. She said this is clearly insufficient and stated her reasons in her order, which is in the government's brief. He then provided a second affidavit along with a net worth statement, but then he had supporting documents that were not legible. And the court said, you need to file these under seal, and the government at least needs to be able to look at them, too, so you can have an inquiry concerning the assets. There was no meaningful ability to do that because he refused to refile legible copies. That's all he had to do. She said, I need you to file legible copies. Instead of filing legible copies, he appeals, files an interlocutory appeal, and that was it. That was done at that point. But, you know, getting to dropping the interlocutory appeal, the trial was not scheduled for four more months. There was plenty of time to proceed with an interlocutory appeal, and in the end, the trial didn't occur until another year after that. So there was plenty of time to go forward with the interlocutory appeal. They just simply chose to drop it. But Judge Rosenthal took a very conservative approach in the way that she proceeded with this, and she gave him so many opportunities to be able to just come forward and say, let's see where we are, because when you look at Matthews v. Eldridge, which the Holy Land and the Fifth Circuit in Holy Land decided that Matthews v. Eldridge does apply, and that's when due process requires a hearing. What showing should be made? And it's a three-part test. And the first test is for there to be a private interest that's being impacted by the procedure. His right to qualified counsel of choice, how would it be impacted by what was occurring here? And so the courts have all held, except for the Ninth Circuit, that to show a financial need for the, you know, to provide sufficient evidence to show that you have a financial need for access to that asset to pay attorney's fees, is you should show you do actually, you have no other assets with which to obtain an attorney, and he refused to do that. So he refused to even show the first aspect of the Matthews v. Eldridge, because if you don't, can't show you have, don't have other assets, and you can't really show, your private interest really goes down to almost a minimal, almost like what Holy Land said with regards to the third party. If you, they were like an unsecured creditor. I know it's a different situation. It's not a defendant asking for counsel of choice. But still it goes to assessing his private interest. And that's what the Court found. And then the two other procedures. No, Your Honor, and that goes to the other question. All the cases that have talked about this have been restraints. They've been actual restraints or seizures. And that's what our argument was in this case. It's not even a restraint or a seizure. All it is is a notice telling the world that yes, this party, that this property, there's some litigation that is attached to this property. But it's not the same thing as a lien. It's not the same thing as attachment. It's not a restraint. And it's not a seizure. So it's even also a less impact on the private interest because you can still sell, even though I know it does affect the fair market value. But you still have control over that property. It's not taking control away like a restraint or other types of seizures. But the probable cause is still the seizure. Judge Clement specifically asked is there something pending in the Supreme Court. What's your response to what your opponent said about a conference on a motion on February 17? Your Honor, I'm not sure how to read that. But I looked into that as well. To file a motion with the Supreme Court, there are certain procedures that have to take place for an application. What motion? Can you explain what the motion is? Obviously, the opposing counsel identified it. Are you familiar with that motion? No, I'm not familiar with that. I'm not trying to press your honor. But, Your Honor, I think it's outside of this litigation with regards to what is going on in that application. And they're also talking about an office building, which, by the way, he submitted a security for a $200,000 bond right upon when he was convicted. He wanted to be out on bond. And he had this asset, which he's declared to have $200,000 to $350,000 equity that was available to him throughout the proceedings. So we now know he does have an asset that has equity that now he's been arguing that he should have on appeal. And that's sort of a side issue that doesn't have anything to do with the properties involved in the criminal forfeiture specifically. But it does show. It shows. And he was able to retain other lawyers. He retained Dan Cogdell for two years. That was the whole purpose for finding out what his financial situation was. And he never gave Judge Roosevelt the opportunity. Your time has expired now, Ms. Hayden. Thank you. Thank you, Your Honor. Ms. Criswell, you've saved time for rebuttal. What are you talking about, about Justice Kagan and February 17th? What are you talking about? Does it have anything to do with this case? Yes, it does, Your Honor. Why doesn't counsel for the government know? I'm not sure why she doesn't know. Did you serve her within three years? I served the Solicitor General as required under the United States Supreme Court rules. And Justice Kagan referred my motion to the entire court. My motion is to stay the interlocutory sale of the Wickford property. Judge Rosenthal entered an order to sell the property before the appeal is even resolved. Do you happen to have the Supreme Court docket number for this? It's 16A0632, I think. I can definitely provide that to you before I leave this afternoon. 16A, I think it's 0632. I think that's the last. But I filed that motion in this court first to stay the interlocutory order for sale of the Wickford property, and it was denied. Then I filed it in the United States Supreme Court, and Justice Kagan referred it to the entire court for their consideration. Did you serve opposing counsel in the copy? I did not serve. I served the Solicitor General, which is what the Supreme Court rules require me to do. So I assume that they might have been notified by the Solicitor General in Washington, D.C. But all I know is that once I filed it, and it was referred to the court for conference, the attorney, Mr. Doyle, who has been pursuing the sale of the property, has stopped communicating with me about it. And before that, he was very eager to sell the property. So it was an appeal from Judge Rosenthal in this case, the case that we're hearing? Yes. I don't know why I didn't serve opposing counsel, but we'll see. Well, I served the Solicitor General, which is what the Supreme Court rules require. And so — and I'm assuming that the Solicitor General notified the U.S. Attorney's Office because they have stopped pursuing the sale at this point in time. Regarding the waiver claims, first of all, waiver is an intentional — is a known intentional relinquishment of a right. And Mr. Fish did not knowingly waive his right to contest his due process rights by non-suiting his prior appeal. He non-suited it. He did not dismiss it with prejudice. And so that is not a waiver. It is the government, in fact, that waived any claim it had that the Wickford property is tainted. It continues to argue in its brief that the Wickford property is tainted in reliance on prosecutor statements only. No evidence. They made no effort to prove that the Wickford property was tainted. I believe because they didn't have any evidence to do so. And that's why they recorded a Liz Pendence, because they couldn't establish probable cause. That is why they didn't try to prove that it was tainted at trial, because they couldn't prove probable cause, and that that's why they went for it as a substitute asset instead, because there was never any evidence that it was tainted to begin with. Not only that, the record shows they knew. Excuse me. Did you present any evidence that — well, you weren't the lawyer, but whoever the lawyer was, that Mr. Fish was actually earning money unrelated to these alleged briberies? I do not — I do not know that there was any evidence of that in the record. In fact, I think that Mr. McCrumb did a pretty pitiful job, and I think it probably had to do with his medical condition. I believe Mr. McCrumb is an exceptional attorney. He has an exceptional reputation as a criminal defense attorney. And I just personally believe, based on reading the record, that he was ill, that he suffered some serious medical condition in the middle of the trial, and that that was likely to have impacted his performance in this particular case. The text messages between him and Mr. Fish demonstrate very clearly he did nothing to prepare for this case. He didn't interview a single witness. He subpoenaed witnesses. They called his office, and he never even returned the call. He told Mr. Fish that criminal defense attorneys don't interview witnesses, and he could do it at night by phone. He never called these witnesses. They — there was testimony these witnesses could have offered that would have directly contradicted testimony that the government offered, including the testimony that Mr. Fish got Mr. Portillo and his wife to sign. Those the judge had to consider. The time has expired now. Ms. Criswell, your case is under submission. Thank you, Your Honor. Next case, Powell v. McCrumb.